tonator of the mine, thereby exploding the mine directly by means of the sea battery current without the aid of a relay circuit or of dry cells. This method of operating the mine is called "direct firing." In addition to this Harrison extends an antenna downwards from the mine and anchors it in place. These additions are the basis of Harrison's claims, as set out in counts 5, 6, and 7 of the issue.

The decisions of the Patent Office as to these counts are not uniform. The examiner of interferences awarded priority of invention as to them to Harrison. The examiners in chief held that priority as to count 5 should be awarded to Harrison, but recommended that the claim be rejected as unpatentable; and that priority as to counts 6 and 7 should be awarded to Browne. The Commissioner of Patents awarded priority as to counts 5, 6, and 7 to Harrison.

In our opinion, Harrison's "direct firing" device does not amount to invention over Browne's structure. It is well said by the law examiner that, "In the present development of the electrical art, structures are equivalent though one has a local circuit and relay and the other does not." The change of construction was but a mere alteration of elements already obvious in Browne's invention, and cannot entitle Harrison to priority. The same conclusions arise with reference to the downwardly extending antenna of Harrison. Moreover, it is apparent that both of these elements were considered by Browne when constructing his device before the time when Harrison entered the field.

The decision of the Commissioner of Patents as to counts 5, 6, and 7, involved in appeal 1903, is reversed, and priority of invention as to these counts is awarded to the senior party Browne. The decision of the Commissioner of Patents involved in appeal 1904, awarding priority of invention as to counts 1, 2, and 3 to Browne is affirmed.

---

## In re DELI.

Court of Appeals of District of Columbia.

Submitted May 15, 1928. Decided June 4, 1928.

No. 2059.

Patents ⚹⟹42—Claims 1, 5, and 7 of application relating to mechanical pencil held patentable, as involving novel elements and characteristics.

Claims 1, 5, and 7 of application relating to a mechanical pencil having a peculiar plunger construction *held* patentable, as involving production of pencil with novel elements and char-

acteristics, and carefully limited in scope, so as to cover no more than what had been accomplished.

Appeal from the Commissioner of Patents.

Application by Frank C. Deli for a patent. From a decision rejecting the application, applicant appeals. Reversed as to certain claims, and affirmed as to others.

J. H. Milans and C. T. Milans, both of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Patent Office rejecting the claims in appellant's application for a patent.

The invention relates to a mechanical pencil having a peculiar plunger construction. There is a needless multiplicity of counts in the application, as, out of the seven, counts 1, 5 and 7, here reproduced, sufficiently define the invention:

"1. In a pencil, the combination of a body and lead-advancing mechanism, including a plunger, said plunger having side projections that act as threads, said projections being formed of metal that has been displaced laterally from the body of the plunger."

"5. A plunger for use in mechanical pencils, said plunger consisting of a length of wire having a plurality of lateral projections corresponding to threads, the metal in the lateral projections being composed of a portion of the metal of the body of the plunger that has been displaced laterally."

"7. A lead-propelling plunger, composed of a length of wire, one end of which is flattened and the opposite end of which is provided with a plurality of separate, noncontinuous, lateral projections composed of metal displaced from the body of the wire by locally reducing the cross-sectional area thereof."

In his specification appellant directs attention to the importance, in the commercial manufacture of mechanical pencils of the type in which a threaded plunger is utilized, of having the coacting threads on the tube and plunger sufficiently firm and rugged in construction as to withstand the hard usage to which such pencils usually are subjected. The applicant then says that in his invention the lead tube with which the plunger co-op-

erates is provided with helical grooves corresponding to threads, and that "the plunger for co-operation therewith consists of a wire having its head flattened, the threads for co-operation with the helical groove in the tube being formed by one stroke of a die, in which the metal is flattened at diametrically opposite points and caused to flow outside of the normal contour of the wire. This results in the formation of lateral projections from the wire."

Appellant contends that he has thus produced a simpler and more efficient construction than is to be found in the prior art; that his pencil is easily disassembled and new lead installed.

The principal references cited by the Patent Office tribunals are the patents to Bergen and Most (No. 1,319,039, October 21, 1919; No. 1,325,570, December 23, 1919). In the Bergen patent there is no flattened head or end of the plunger, nor is it provided with laterally displaced projections. The plunger of the Most patent has no flattened head, nor has it laterally displaced projections, unless the two bends therein can be so considered; and, in our view, it would be a strained construction to rule that such bends constitute "lateral projections corresponding to threads, the metal in the lateral projections being composed of a portion of the metal of the body of the plunger that has been displaced laterally."

It thus appears that the claims of the issue avoid the cited references. In other words, appellant has produced a pencil with novel elements and characteristics. The claims are carefully limited in scope, so as to cover no more than what has been accomplished by him. The device is practical, marks an advance in the art, and we think its production involved the exercise of inventive faculties.

Decision reversed as to claims 1, 5, and 7. Affirmed as to other claims.

Reversed as to claims 1, 5, and 7.
Affirmed as to other claims.

---

## Application of PARR.

Court of Appeals of District of Columbia.

Submitted May 15, 1928. Decided June 4, 1928.

No. 2065.

1. Patents ⬅32—Doubt as to patentability should be resolved in favor of applicant.

In case of real doubt as to patentability, doubt should be resolved in favor of applicant.

26 F.(2d)—64

2. Patents ⬅17(3)—Edible ice cream containers held patentable as advance in art.

Claim in application for a patent on edible ice cream containers, limited to particular structure shown, *held* patentable as constituting an advance in the art.

Appeal from Commissioner of Patents.

In the matter of the application of George T. Parr for a patent on edible ice cream containers. From a decision rejecting all of the claims, the applicant appeals. Reversed as to one of claims, and affirmed as to others.

J. E. Lind, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Patent Office rejecting all of the claims in appellant's application for a patent on edible ice cream containers.

Claim 8, being representative, is here reproduced: "An ice cream container formed of edible material comprising a pair of bowed substantially parallel side walls, end walls intersecting at one end connecting said side walls and defining an opening, said side walls having an outward flare adjacent said opening, a bead formed in said walls surrounding said opening and corrugations in certain of said walls strengthening the same and extending to said bead."

According to the specification and drawings, appellant's container simulates the shape of a piece of pie, the sides of the container having longitudinal corrugations that are said to prevent the walls from breaking while the ice cream is being consumed. The side walls of the container have an outward flare adjacent to the opening; it having been found that without the flare many containers would warp and break during shipment. In addition to these features, the extreme edge of the container is provided with a bead or lip for the purpose of still further strengthening the container.

The Board of Examiners in Chief and the Assistant Commissioner were of the view that no invention was involved in giving to the container shown in Rea's design patent, No. 40,739, dated June 21, 1910, a shape corresponding to that shown in the Morrison patent, No. 883,734, dated April 7, 1908.

In the Rea design patent it does not appear whether the corrugations in the side